# EXHIBIT "B"

**FILED**
30 JUN 2020 03:33 pm
Civil Administration
**F. HEWITT**

---

|  |  |  |
|---|---|---|
| CIGAR ASSOCIATION OF AMERICA, INC.; | : | COURT OF COMMON PLEAS |
| ITG CIGARS, INC.; SWEDISH MATCH NORTH | : | PHILADELPHIA COUNTY |
| AMERICA, LLC; AND SWISHER | : |  |
| INTERNATIONAL, INC., | : | CIVIL ACTION - EQUITY |
|  | : |  |
| *Plaintiffs,* | : | JUNE TERM, 2020 |
|  | : |  |
| v. | : |  |
|  | : | NO.  00904 |
| THE CITY OF PHILADELPHIA; AND | : |  |
| THOMAS FARLEY, M.D., M.P.H., IN HIS | : |  |
| OFFICIAL CAPACITY AS COMMISSIONER OF | : |  |
| THE DEPARTMENT OF PUBLIC HEALTH OF | : |  |
| THE CITY OF PHILADELPHIA, | : |  |
|  | : |  |
| *Defendants.* | : |  |

---

## ORDER

AND NOW, this _____ day of _____, 2020, upon consideration of

the Motion of Plaintiffs Cigar Association of America, Inc., ITG Cigars, Inc., Swedish

Match North America, LLC, and Swisher International, Inc. (collectively, "Plaintiffs") for

a Preliminary Injunction enjoining Defendants City of Philadelphia ("City") and Thomas

Farley, M.D., M.P.H, in his official capacity as Commissioner of the Department of

Health of the City of Philadelphia (collectively, "Defendants") from enforcing Ordinance

No. 180457, *codified at* Phila. Code § 9-639, titled "Sale of Flavored Tobacco Products"

("Ordinance 180457"), and any response thereto, the Court FINDS:

1.      Plaintiffs have demonstrated that they are likely to succeed on the merits

of their claims;

2.      Plaintiffs have demonstrated that they will sustain immediate and

irreparable injury unless a preliminary injunction is entered;

3.      The balance of the equities favors entry of a preliminary injunction;

4.      The relief provided herein is reasonably suited to abate the offending activity;

5.      The relief provided herein is not contrary to the public's interest; and

6.      Plaintiffs have served Defendants with written notice of the Motion.

NOW, THEREFORE, it is ORDERED:

1.      Defendants and their directors, officers, agents, affiliates, subsidiaries, servants, employees, and all other persons or entities in active concert or privity or participation with them are restrained and enjoined from enforcing Ordinance 180457.

2.      This Order shall remain in effect pending further Order of the Court, and the Court retains jurisdiction to enforce the preliminary injunction.

BY THE COURT:

_____
                                                                              J.

Case ID: 200600904
Control No.: 20062235

|  |  |  |
|---|---|---|
| CIGAR ASSOCIATION OF AMERICA, INC.; ITG CIGARS, INC.; SWEDISH MATCH NORTH AMERICA, LLC; AND SWISHER INTERNATIONAL, INC., | : : : : : | COURT OF COMMON PLEAS PHILADELPHIA COUNTY CIVIL ACTION - EQUITY |
| *Plaintiffs,* | : : | JUNE TERM, 2020 |
| v. | : : | NO.  00904 |
| THE CITY OF PHILADELPHIA; AND THOMAS FARLEY, M.D., M.P.H., IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF THE DEPARTMENT OF PUBLIC HEALTH OF THE CITY OF PHILADELPHIA, | : : : : : : | |
| *Defendants.* | : : | |

## RULE TO SHOW CAUSE
## <u>WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE</u>

Upon consideration of the Motion of Plaintiffs Cigar Association of America, Inc.,

ITG Cigars, Inc., Swedish Match North America, LLC, and Swisher International, Inc.

(collectively, "Plaintiffs") for a Preliminary Injunction enjoining Defendants City of

Philadelphia ("City") and Thomas Farley, M.D., M.P.H, in his official capacity as

Commissioner of the Department of Health of the City of Philadelphia (collectively,

"Defendants") from enforcing Ordinance No. 180457, codified at Phila. Code § 9-639,

titled "Sale of Flavored Tobacco Products" ("Ordinance 180457"),

IT IS ORDERED THAT Defendants show cause before this Court on the

_____ day of _____, 2020 at _____ in Courtroom _____, or as

soon thereafter as counsel can be heard, as to why a Preliminary Injunction providing

the relief sought in the accompanying Motion should not be entered; and

IT IS FURTHER ORDERED that Plaintiffs shall cause a copy of this Rule, along with the aforesaid Motion and accompanying papers, to be served upon Defendants.

BY THE COURT:

Dated: _____                  _____
                                                                                    J.

Case ID: 200600904
Control No.: 20062235

HANGLEY ARONCHICK SEGAL PUDLIN
& SCHILLER
By:   Mark A. Aronchick (Atty. I.D. No. 20261)
       maronchick@hangley.com
       John S. Summers (Atty. I.D. No. 41854)
       jsummers@hangley.com
       Andrew M. Erdlen (Atty. I.D. No. 320260)
       aerdlen@hangley.com
One Logan Square, 27th Floor
Philadelphia, PA 19103-6933
(215) 568-6200                                    *Attorneys for Plaintiffs*
(215) 568-0300 (facsimile)

---

| | | |
|---|---|---|
| CIGAR ASSOCIATION OF AMERICA, INC.; | : | COURT OF COMMON PLEAS |
| ITG CIGARS, INC.; SWEDISH MATCH NORTH | : | PHILADELPHIA COUNTY |
| AMERICA, LLC; AND SWISHER | : | |
| INTERNATIONAL, INC., | : | CIVIL ACTION - EQUITY |
| | : | |
| *Plaintiffs,* | : | JUNE TERM, 2020 |
| | : | |
| v. | : | |
| | : | NO.  00904 |
| THE CITY OF PHILADELPHIA; AND | : | |
| THOMAS FARLEY, M.D., M.P.H., IN HIS | : | |
| OFFICIAL CAPACITY AS COMMISSIONER OF | : | |
| THE DEPARTMENT OF PUBLIC HEALTH OF | : | |
| THE CITY OF PHILADELPHIA, | : | |
| | : | |
| *Defendants.* | : | |

---

**PLAINTIFFS CIGAR ASSOCIATION OF AMERICA, INC., ITG CIGARS, INC.,
SWEDISH MATCH NORTH AMERICA, LLC, AND SWISHER
INTERNATIONAL, INC.'S MOTION FOR A PRELIMINARY INJUNCTION**

Pursuant to Pennsylvania Rule of Civil Procedure 1531, Plaintiffs Cigar

Association of America, Inc., ITG Cigars, Inc., Swedish Match North America, LLC, and

Swisher International, Inc. ("Swisher") (collectively, "Plaintiffs") respectfully submit this

Motion for a Preliminary Injunction ("Motion") enjoining Defendants City of

Philadelphia ("City") and Thomas Farley, M.D., M.P.H, in his official capacity as

Commissioner of the Department of Health of the City of Philadelphia (collectively, "Defendants") from enforcing Ordinance No. 180457, *codified at* Phila. Code § 9-639, titled "Sale of Flavored Tobacco Products" ("Ordinance 180457"),[1] and in support of this Motion aver as follows:

## I.  BACKGROUND

### A.  Ordinance 180457 And Its Legislative History.

1.  On December 18, 2019, the City enacted the Ordinance, which generally prohibits the sale or offer for sale of tobacco products with "characterizing flavors." *See* Ex. 1, Ordinance No. 180457, *codified at* Phila. Code § 9-639, titled "Sale of Flavored Tobacco Products."[2]

2.  Section 1(2), titled "Sale of Flavored Tobacco Products Prohibited," provides that:  "It shall be a violation of this Section for any person to sell or offer for sale, or to possess with intent to sell or offer for sale, *any* Flavored Cigar or Flavored Roll-Your-Own-Tobacco." Ex. 1, at Section 1(2) (emphasis added).

3.  Ordinance 180457's Preamble states that its purpose is to reduce overall consumption of tobacco products by minors by limiting the availability of flavored

---

[1] A copy of Plaintiffs' Complaint is attached as Exhibit A to the accompanying Memorandum of Law.  A copy of Ordinance 180457 is attached as Exhibit 1 to the Complaint.  Unless otherwise noted, all references to Exhibits refer to those attached to the accompanying Memorandum of Law, and all numbered Exhibits refer to the exhibits attached to the Complaint.

Plaintiffs' Memorandum of Law in support of their Motion for a Preliminary Injunction is incorporated as if fully set forth herein.

[2] The full title of Ordinance 180457 is "An Ordinance Amending Chapter 9-600 of The Philadelphia Code, entitled 'Service and Other Businesses,' to add a new Section 9-637, entitled 'Sale of Flavored Tobacco Products," prohibiting offering for sale and selling certain tobacco products other than cigarettes with characterizing flavors and fixing penalties; all under certain terms and conditions."

Case ID: 200600904
Control No.: 20062235

tobacco products.  *See* Ex. 1.  It further provides that "while federal, state, and local laws prohibit the sale of tobacco products to minors, many young people are able to access tobacco products without directly purchasing them, so that complementary efforts to reduce the overall availability of flavored tobacco products in Philadelphia are needed[.]"  *See id.*; Ex. A, at ¶¶ 29-34.

4.      The Ordinance includes an "exception" from its ban for what Ordinance 180457 defines as "Tobacco Products Distribution Business[es]."  Per the Ordinance, a "Tobacco Products Distribution Business" is:

> An establishment that [1] prohibits minors from entering; [and 2] provides neither food nor beverage to customers; and [3] derives ninety percent (90%) or more of gross sales on an annual basis from Tobacco Products and accessories used in the consumption of Tobacco Products, including from sales via the internet which are delivered only upon verification of identity and age.

Ex. 1, Section 1(3).

5.      An establishment that does not meet all three requirements is not a "Tobacco Products Distribution Business" and is not exempt from the ban.  *See id.*

6.      The Ordinance imposes penalties, fines, and, potentially, loss of the permit necessary to sell tobacco products.  Violators must remit $250 and pay a maximum fine of $2,000 per violation.  *See* Ex. 1, Section (1)(4)(.a); *see also* Phila. Code § 1-109(3).  A retailer will be denied a Tobacco Retailer Permit if it has violated Ordinance 180457 two or more times in the preceding two years.  *See* Ex. 1, Section 1(4)(.b).

7.      Consistent with Ordinance 180457's preamble, its legislative history demonstrates that the City was concerned with youth consumption of certain types of low-cost tobacco products allegedly marketed to minors.  *See* Ex. A, at ¶¶ 79-84.

Case ID: 200600904
Control No.: 20062235

8.     City Council heard testimony relating to children's access to such products, primarily those products that are widely available from small retailers in disadvantaged communities.  *See id.* at ¶ 79; Ex. 7 at 5:15-6:23.

9.     At a Public Health and Human Services Committee hearing, Commissioner Farley testified that the bill "would ban sales of fruit and candy-flavored cigars and cigarillos in the City," and that it is "not legal for stores to sell these products to teens, but many store owners do not abide by that law."  *See* Ex. 7 at 7:25-8:17, 11:13-15, 11:19-12:3.

10.     At an April 23, 2019 meeting of the Committee of the Whole, Councilmember Bass stated that the City has "worked on the issues around cigarillos and other flavored tobacco products, and the Commonwealth has really restricted City Council's ability to pass new regulations on tobacco sales."  *See* Ex. 8, at 138:2-7.

11.     In response, Commissioner Farley stated that "[w]e worked with the Council to try to restrict the flavorings in those cigarillos so they would be less appealing.  As you said, the State Legislature preempted us. . . ."  *Id.* at 139:16-140:2.

**B.     The General Assembly Has Enacted Statutes Preempting, First, Local Regulation of Youth Access To Tobacco In 53 Pa. C.S. § 301, And, Second, The Sale Of Tobacco Products By Licensed Dealers Generally In 72 Pa. Stat. § 232-A.**

12.     The General Assembly has enacted two separate laws that expressly prohibit local governments such as the City from, *first*, regulating minors' access to tobacco products and, *second*, regulating tobacco sales by state-licensed cigarette dealers.

13.     The first of those statutes – Title 53, Municipalities Generally, Chapter 3, Preemptions, Section 301, codified as 53 Pa. C.S. § 301 – provides that the

-4-

Case ID: 200600904
Control No.: 20062235

Commonwealth's law governing minors' access to tobacco products (18 Pa. C.S. § 6305)

expressly preempts and supersedes all local ordinances or rules concerning minors'

access to tobacco products.

14.     Section 301, "Tobacco Product," states:

> (a)  General rule.--Except as set forth in subsection (b), the
> provisions of 18 Pa. C.S. § 6305 (relating to sale of tobacco
> products) shall preempt and supersede any local ordinance
> or rule concerning the subject matter of 18 Pa. C.S. § 6305
> and of section 206-A.

15.     Section 6305, in turn, prohibits the furnishing of tobacco products to

children by any person and by any means; placing or displaying tobacco products by a

retailer in a manner accessible to children (including the location of vending machines);

and displaying or selling cigarettes outside of their pack.

16.     The second law – recently enacted Omnibus Amendments to the

Pennsylvania Fiscal Code ("Act 42") – expressly preempts the City from enacting

regulations regarding the sale of tobacco products by licensed cigarette dealers.  *See* Act

No. 2018-42, Section 232-A, *codified*, 72 Pa. Stat. § 232-A.

17.     Specifically, Section 232-A provides in pertinent part:

> All powers and jurisdiction over dealers licensed under this
> article, and regarding or affecting the sale of tobacco
> products by dealers licensed under this article, shall reside in
> the Commonwealth unless any such power or jurisdiction is
> specifically granted to a political subdivision.

*Id.*

18.     Section 232-A preempts local restrictions on sales by cigarette dealers (*i.e.*,

"dealers licensed under this article," where the article refers to licensed cigarette

dealers) of flavored cigars and loose tobacco.

-5-

Case ID: 200600904
Control No.: 20062235

19.     Plaintiff Swisher is one such licensed cigarette dealer under Pennsylvania law.  *See* Ex. C.

20.     In a recent law journal article, two Chief Deputy City Solicitors opined that "Philadelphia is preempted from regulating youth access to tobacco" by 53 Pa. C.S. § 301, and that 72 P.S. § 232-A "may now preempt the City from regulating the sale of tobacco generally."  *See* Ex. D, Richie Feder & Lewis Rosman, *State Preemption of Local Government: The Philadelphia Story*, 49 Envtl. L. Rep. News & Analysis 10772, 10774 (2019).

21.     The Philadelphia City Solicitor furnished a Memorandum stating that the Ordinance, which was then-pending before City Council, would not be preempted by state law.  *See* Ex. 9.

22.     The Memorandum concluded that the provision preempting Ordinance 180457 – Section 232-A – was unconstitutional and null and void because it was enacted in violation of the Pennsylvania Constitution's "single subject rule."  *See id.*

23.     The Memorandum did "not determine the preemptive reach" of Section 232-A, and it did not analyze in detail why Act 42 violated the "single subject rule."

24.     The Memorandum did not address 53 Pa. C.S. § 301, which preempts local regulation of youth access to tobacco.

25.     The General Assembly is required to pass a balanced Commonwealth budget.  *See* Pa. Const., Art. VIII, s.13.

26.     Act 42 states that "[g]iven the unpredictability and potential insufficiency of revenue collections, various changes in State law relating to sources of revenue, the collection of revenue and the implementation of statutes which impact revenue may be required to discharge this constitutional obligation."  *See* Act 42, Section 1(4).

-6-

Case ID: 200600904
Control No.: 20062235

27.     Act 42 – which included the amendment to Section 232-A – was enacted to "provide for the implementation of the 2018-2019 Commonwealth budget," which the General Assembly is constitutionally required to balance.  *See* Act 42, Section 1.

28.     "Every provision of this act [Act 42] relates to the implementation of the operating budget of the Commonwealth for this fiscal year, addressing in various ways the fiscal operations, revenues and potential liabilities of the Commonwealth. . . . This act provides accountability for spending and makes transfers or other changes necessary to impact the availability of revenue" for the purposes of meeting constitutional requirements and implementing the budget.  *Id.* Section 1(7).

29.     Act 42 expressly prohibits regulations by Philadelphia relating to the sale of "tobacco products" by licensed cigarette dealers.  *See* 72 Pa. Stat. § 232-A.

30.     The preemption amendment (Section 232-A) was included in the fiscal code amendments to protect the collection of revenue by the Commonwealth from local government regulatory efforts that may limit the sale of tobacco products.

31.     The Solicitor's Memorandum does not consider whether the amendments to Section 232-A, like other provisions of Act 42, were enacted to protect state revenues. *See id.*

**C.     The Ordinance Amounts To A Near-Total Ban On Flavored Tobacco Sales And The Loss Of Substantial Revenues For the Commonwealth.**

32.     Plaintiffs engaged Peter Angelides, Ph.D, AICP, of Econsult Solutions, Inc. ("ESI"), to conduct an analysis of the impact of Ordinance 180457.

33.     Dr. Angelides holds a doctorate in economics and has decades of experience in economic consulting and analysis.

Case ID: 200600904
Control No.: 20062235

34.     ESI's report and Dr. Angelides' qualifications are attached as Exhibit B to the accompanying memorandum of law.  *See* Ex. B, Peter Angelides, Ph.D., AICP, Econsult Solutions, Inc., *Analysis of Philadelphia Ordinance Regarding Sales of Flavored Cigars in City of Philadelphia* ("ESI Report") & Ex. 1 thereto.

35.     Dr. Angelides and ESI analyzed the following:  (1) the number of establishments in the City that likely meet the criteria set forth in the definition of "Tobacco Products Distribution Business," and thus meet the requirements of Ordinance 180457's exception and are permitted to sell the otherwise banned products; and (2) the estimated revenues the Commonwealth and City earn from sales of the restricted products, including to estimate the economic impact of Ordinance 180457 on the Commonwealth budget.

36.     As to the first issue, ESI surveyed thousands of businesses in the City to determine which, if any, of those establishments meet the stringent criteria to qualify as a "Tobacco Products Distribution Business."

37.     ESI analyzed a comprehensive data set of tobacco product sales in Philadelphia maintained by Management Science Associates, Inc. ("MSA"), which collects data on unit sales of tobacco and other products from distributors to retail establishments.

38.     MSA's data are used to identify tobacco brand and market trends.  *See* Ex. B, ESI Report, ¶ 9.

39.     ESI concluded that only a handful of businesses in the City meet that definition.

-8-

40.     Specifically, of the approximately 2,490 businesses that sold tobacco products in Philadelphia in 2019, fewer than 10 likely meet the criteria for a "Tobacco Products Distribution Business."

41.     Therefore, over 99% of the City's businesses selling tobacco products do not meet Ordinance 180457's criteria for the exemption.  *See* Ex. B, ESI Report, at ¶¶ 12-22.

42.     As to the second issue, ESI estimated the Commonwealth's sales tax revenue generated by sales of potentially restricted cigars in Philadelphia in 2019 (as well as Philadelphia's estimated tax revenue).

43.     To identify the potentially restricted cigars, ESI used the MSA dataset to calculate the total volume of cigars sold in Philadelphia, and estimated retail prices of such sales.

44.     Then, ESI eliminated from those sales the products listed on the DPH's "unrestricted list," *see* Ex. E, and the balance constituted the "potentially restricted" products.  *See id.* at ¶¶ 25-30.

45.     ESI's approach applied the City's most recent statement of "unrestricted" products and treated, for purposes of its analysis, all other cigars as potentially restricted.

46.     Based on that analysis – which multiplied the number of cigars sold by the retail prices of such cigars, then applied the corresponding tax rate – ESI estimated that the Commonwealth earned $4.2 million in tax revenues from sales of the potentially restricted products in Philadelphia in 2019.

47.     Philadelphia's tax revenues from sales of potentially restricted products were approximately $5.3 million.  *See* Ex. B, ESI Report, at ¶¶ 23-32.

Case ID: 200600904
Control No.: 20062235

**D.      The City's Post-Enactment Interpretations Of Ordinance 180457.**

48.      The City has disseminated several statements regarding the scope and effect of Ordinance 180457.

49.      The City's statements have sown confusion among retailers and the public about what conduct Ordinance 180457 prohibits, *i.e.*, what products retailers are permitted to sell.

50.      The City has not promulgated interpretive regulations.

51.      Plaintiffs do not concede that regulations could save the extensive ambiguities in Ordinance 180457 or justify the arbitrary way the City has handled its implementation, but the City has not even tried to promulgate regulations, issue comprehensive guidance, or provide *any* clear statements that would guide the public as to Ordinance 180457's scope.

52.      The day after it was enacted, DPH issued a release announcing that Ordinance 180457 was intended to prohibit the sale of ". . .  four- or five-for-a-dollar, brightly colored candy-flavored cigarillos  . . . .  found in stores throughout Philadelphia. Due to the extremely low cost and sweet flavors, cigarillos are an easy way for children to start an addiction to tobacco." *See* Ex. 2.

53.      Yet Ordinance 180457 restricts the sale of all flavored cigars and other tobacco products, not just low-cost "candy or fruit flavored" cigarillos.  *See* Ex. 1.

54.      DPH subsequently issued two messages to retailers announcing the prohibition on the sale of flavored tobacco – but the messages do not define what products are prohibited, and which are not.  *See* Ex. A, at ¶ 71(a)-(b), Ex. 3, Ex. 4.

-10-

Case ID: 200600904
Control No.: 20062235

55.     Since then, DPH has published a series of lists of products that are "unrestricted," *i.e.*, not subject to the ban.  *See* Ex. A, at ¶ 71(c).

56.     These lists include only product names, and each list is different from the list that preceded it.  *See* Exs. 5, 6; Ex. E (June 9, 2020 DPH list of "unrestricted" products).

57.     The lists offer no explanation for how or why DPH made its regulatory decisions, including how or why tobacco products are "unrestricted" and thus not subject to the ban, and, on the other hand, why certain products are restricted, and thus banned.  *See* Exs. 5-6; Ex. E; *see generally* Ex. A, at ¶¶ 66-78.

58.     These statements have led to confusion and misinformation among retailers about what products are banned, which confusion the City has acknowledged.[3]

59.     More than six months after Ordinance 180457 was enacted, there is still no developed definition of Ordinance 180457's core concept – the meaning of "characterizing flavor."

_____

[3] DPH has specifically acknowledged that there is confusion and misinformation among retailers, specifically, "[i]t has come to [DPH's] attention that unofficial, and incorrect, communication about what cigar, cigarillo and roll your own tobacco products are legal to sell in the city under the new flavored tobacco law is being shared among tobacco retailers.  . . . The law restricts the sale of any cigar, cigarillo or roll your own tobacco that smells or tastes like anything other than just tobacco."  Ex. 4.

Case ID: 200600904
Control No.: 20062235

## II.   PLAINTIFFS' ENTITLEMENT TO PRELIMINARY INJUNCTIVE RELIEF

### A.   Plaintiffs Have A Clear Right To Relief And Are Likely To Succeed On The Merits Of Their Claims.

#### 1.   The Ordinance Is Expressly Preempted By Two Commonwealth Statutes

60.   Municipalities such as the City possess only such powers of government as are expressly granted to them and as are necessary to carry the same into effect.  The City's ability to exercise its municipal functions is limited by its home rule charter, the Pennsylvania Constitution, and enactments of the General Assembly.

61.   Ordinance 180457 is facially invalid because it is expressly preempted by two separate duly-enacted Commonwealth laws, which direct that local governments such as the City are prohibited from regulating minors' access to tobacco products and the licensing of entities that sell tobacco products.

#### (a)   The Ordinance Is Expressly Preempted By Commonwealth Statutes Related To Youth Access To Tobacco Products.

62.   The first of the two preemption statutes– 53 Pa. C.S. § 301 – provides that the Commonwealth's law governing minors' access to tobacco products (18 Pa. C.S. § 6305) expressly preempts and supersedes all local ordinances or rules concerning minors' access to tobacco products.  Section 301, "Tobacco Product," states:

> (a)  General rule.--Except as set forth in subsection (b), the provisions of 18 Pa. C.S. § 6305 (relating to sale of tobacco products) shall preempt and supersede any local ordinance or rule concerning the subject matter of 18 Pa. C.S. § 6305 and of section 206-A.

63.   Section 6305 enumerates a series of "summary offenses," including if "a person" does any of the following:

> (1) sells a tobacco product to any minor;

-12-

Case ID: 200600904
Control No.: 20062235

(2) furnishes, by purchase, gift or other means, a tobacco product to a minor;

(3) [Deleted];

(4) locates or places a vending machine containing a tobacco product in a location accessible to minors;

(5) displays or offers a cigarette for sale out of a pack of cigarettes; or

(6) displays or offers for sale tobacco products in any manner which enables an individual other than the retailer or an employee of the retailer to physically handle tobacco products prior to purchase unless the tobacco products are located within the line of sight or under the control of a cashier or other employee during business hours, except that this paragraph shall not apply to retail stores which derive 75% or more of sales revenues from tobacco products.

18 Pa. C.S. § 6305(a).

64.     In short, Section 6305 broadly prohibits the furnishing of tobacco products to minors, *e.g.*, furnishing of tobacco products to children by *any* person and by *any* means, whether by sale or not; placing or displaying tobacco products by a retailer in a manner accessible to children (including the location of vending machines); and displaying or selling cigarettes outside of their pack.  *See* 18 Pa. C.S. § 6305.

65.     Indisputably, Ordinance 180457 facially and purposefully regulates youth access to tobacco products.

66.     The Preamble states that Ordinance 180457's purpose is to reduce overall consumption of tobacco products by minors by limiting the availability of flavored tobacco products, and further acknowledges that "while federal, state, and local laws prohibit the sale of tobacco products to minors, many young people are able to access tobacco products without directly purchasing them . . ."  *See* Ex. 1.

-13-

Case ID: 200600904
Control No.: 20062235

67.     Thus, Ordinance 180457 comprehensively prohibits the sale of flavored tobacco products in Philadelphia (by any person, to any person) for the specified purpose of limiting youth access to tobacco products – that is, the very same subject matter as the Commonwealth statutes, and as such, "Philadelphia is preempted from regulating youth access to tobacco" by 53 Pa. C.S. § 301.  *See* Ex. D, Feder & Rosman, 49 Envtl. L. Rep. News & Analysis at 10774.

### (b)     The Ordinance Is Expressly Preempted By A Commonwealth Statute Related To Tobacco Product Sales By Licensed Dealers.

68.     The second preemption statute – Act 42 – expressly preempts the City from enacting regulations regarding the sale of tobacco products by licensed cigarette dealers.  *See* Act No. 2018-42, Section 232-A, *codified*, 72 Pa. Stat. § 232-A.

69.     Act 42, among many things, expressly prohibits regulations by Philadelphia relating to the sale of "tobacco products" by licensed cigarette dealers.  *See* 72 Pa. Stat. § 232-A.  Section 232-A specifically provides in pertinent part:

> All powers and jurisdiction over dealers licensed under this article, and regarding or affecting the sale of tobacco products by dealers licensed under this article, shall reside in the Commonwealth unless any such power or jurisdiction is specifically granted to a political subdivision.

70.     Hence, Section 232-A broadly preempts local regulation of all matters "regarding or affecting the sale of tobacco products" by licensed dealers, and thus preempts Ordinance 180457's restrictions on sales by licensed cigarette dealers.

71.     Plaintiff Swisher is regulated by state law as a licensed cigarette dealer. *See* Ex. C.

Case ID: 200600904
Control No.: 20062235

72.     Act 42 preempts Ordinance 180457's regulation of Swisher and other entities who are state-licensed tobacco dealers.  *See also* Ex. D, Feder & Rosman, *supra*, 49 Envtl. L. Rep. News & Analysis at 10774.

73.     The City Solicitor's Memorandum concluding that Act 42 did not preempt Ordinance 180457 did not address the preemptive effect of Section 232-A.

74.     Nor did it analyze the General Assembly's reservation of "all powers and jurisdiction" over tobacco sales to the Commonwealth.

75.     Instead, the Solicitor opined that Act 42 violates the so-called "single subject rule" of the Pennsylvania Constitution.  *See* Ex. 9.

76.     Rather than embracing multiple subject matters, Act 42's purpose was to implement the Commonwealth budget in furtherance of the General Assembly's constitutional duties.

77.     The General Assembly is required to pass a balanced Commonwealth budget.  *See* Pa. Const., Art. VIII, s.13.  Act 42 specifically states that its purpose is to implement the Commonwealth budget and to ensure "the collection of revenue . . . to discharge this constitutional obligation [to balance the budget.]" *See* Act 42, Section 1.

78.     Moreover, "[e]very provision" of Act 42 "relates to the implementation of the operating budget of the Commonwealth for this fiscal year, addressing in various ways the fiscal operations, revenues and potential liabilities of the Commonwealth. . . . This act provides accountability for spending and makes transfers or other changes necessary to impact the availability of revenue" for the purposes of meeting constitutional requirements and implementing the budget.  *Id.* Section 1(7).

79.     Among those many items "necessary to impact the availability of revenue," Act 42 expressly prohibits regulations by Philadelphia relating to the sale of tobacco by

-15-

Case ID: 200600904
Control No.: 20062235

licensed dealers, and Section 232-A's preemption is closely tethered to the fiscal code amendments' purpose to ensure revenue streams to implement and balance the Commonwealth's budget.

80.     Tobacco sales have a significant impact on Commonwealth revenues.

81.     Section 232-A was included in the fiscal code amendments to protect that revenue from local regulatory efforts that may limit the sale of tobacco products.

### 2.     The Ordinance Violates The Due Process Clause Of The Commonwealth And Federal Constitutions

82.     The Ordinance violates Plaintiffs' constitutional Due Process rights under the Commonwealth and United States Constitutions.

83.     Ordinance 180457 effectively imposes a near-total ban on the sale of cigars and other tobacco products in the City.

84.     The products banned by Ordinance 180457 are otherwise lawful and are sold by retailers to adult consumers in the City.

85.      Plaintiffs have constitutionally-protected rights to sell legal products to consumers allowed by law to purchase them.

86.     Further, Ordinance 180457 – by its terms and as applied – is not rationally related to the City's stated interest in preventing youth from consuming flavored tobacco.

87.     *First*, Ordinance 180457 effectively bans the sale of flavored cigars and tobacco products to *anyone* in the City, not just the youth the City is intending to protect.

88.     Commonwealth law already prevents the furnishing or sale of flavored tobacco products to minors, and City Council heard no evidence that Ordinance 180457

-16-

Case ID: 200600904
Control No.: 20062235

would in fact limit minors' access to, or consumption of, the flavored tobacco products banned by the Ordinance.  The Ordinance thus is unmoored from its goal, namely preventing youth smoking.

89.     *Second*, Ordinance 180457 irrationally distinguishes between businesses permitted to sell flavored tobacco and those that are not.

90.     For example, Ordinance 180457 prohibits a business from selling flavored cigars and other tobacco products if it also provides any "food" or "beverage," yet allows an otherwise identical business from selling flavored cigars and other tobacco products if the establishment does not provide food or beverage.  *See* Ex. 1.

91.     That distinction is irrational and has no bearing on youth access to flavored tobacco.

92.     The Ordinance also prohibits businesses from selling flavored cigars and tobacco products if their gross sales are less than 90% from the sale of tobacco products and accessories, yet there is no rational connection between reducing flavored tobacco consumption by minors with such a gross sales threshold.

93.     *Third*, Ordinance 180457 is not rationally related to the City's interests because the definition of "characterizing flavor" is fatally flawed.

94.     The definition is not targeted to the cigars or other tobacco products that youth are smoking; rather, it irrationally turns on whether the cigar or other tobacco product has a taste or aroma "relating to" fruit, chocolate, vanilla or the like that is not "of tobacco."

95.     Yet Ordinance 180457 does not define what it means to "relate to" one of the enumerated flavors, or what it means to be "of tobacco."  *See* Ex. 1.

Case ID: 200600904
Control No.: 20062235

96.     Due to these ambiguities, Ordinance 180457 cannot be saved by regulations, interpretative statements by the City, or other administrative rules.

97.     The public is thus left without any notice or explanation of the City's determinations of what products are "restricted" under Ordinance 180457 (or not).  *See* Ex. A, at ¶¶ 66-78.

### 3.     The Ordinance Is Unconstitutionally Vague Under The Commonwealth And Federal Constitutions

98.     Ordinance 180457 fails to provide adequate notice of what products are subject to its ban.

99.     Specifically, Ordinance 180457 defines "flavored" cigars and other tobacco products as those products that impart a "Characterizing Flavor."  *See* Ex. 1.

100.     However, the definition of "Characterizing Flavor" is vague and ambiguous.  "Characterizing Flavor" is defined as:

> A taste or aroma, other than the taste or aroma <u>of tobacco</u>, imparted either prior to or during consumption of a Tobacco Product or any byproduct produced by the Tobacco Product, including, but not limited to, any taste or aroma <u>relating to</u> fruit, chocolate, vanilla, honey, candy, cocoa, dessert, alcoholic beverage, mint, wintergreen, herb, or spice; provided, however, that a Tobacco Product shall not be determined to have a Characterizing Flavor solely because of the use of additives or flavorings or the provision of ingredient information.

*See* Ex. 1, at Section 1(1) (emphases supplied).

101.     Thus, a cigar (or other tobacco product) has a Characterizing Flavor if it (a) has a taste or aroma "relating to" fruit, chocolate, vanilla, honey, candy, cocoa, dessert, alcoholic beverage, mint, wintergreen, herb, or spice; and (b) that taste or aroma is not "of tobacco."

Case ID: 200600904
Control No.: 20062235

102.   *First,* Ordinance 180457 nowhere defines what it means for a taste or aroma to be "of tobacco" or not "of tobacco."   *See* Ex. 1.

103.   The phrase "of tobacco" is not susceptible to any clear meaning, and could refer to the taste or aroma of (a) tobacco in some pure, uncured state; or (b) tobacco that has been through some stage of curing and manufacturing; or (c) tobacco in its final form in the cigar or tobacco product being sold; or (d) tobacco in some other, unspecified stage of cultivation, production, or manufacturing.  Tobacco is developed in many stages, which have many different facets that could be considered "flavors," and no one can ascertain what the City is driving at by its use of "of tobacco."

104.   *Second*, the phrase "relating to" the aroma or taste of fruit, chocolate, etc. is not susceptible to any clear meaning and is also vague and ambiguous.

105.   Something may have the taste or smell of fruit but it is unclear what it means for something to have a taste that "relat[es]" to fruit.

106.   Additionally, Ordinance 180457 is vague and ambiguous, as applied, because there is no objective taste or aroma measure for determining whether a given taste or aroma is "related to" fruit, chocolate or the like.

107.   *Third*, the "provided however" clause near the end of the Characterizing Flavor definition makes the definition yet more ambiguous.

108.   *Fourth*, although no regulation would save the Ordinance from these ambiguities, the City has compounded the vagueness of Ordinance 180457 by not even trying to issue interpretive statements or regulations.

109.   Instead, the City has issued standardless and confusing characterizations of the Ordinance that fail to disclose what criteria, if any, it applied to reach its "determinations" of the products banned by the Ordinance, *i.e.,* those products with

Case ID: 200600904
Control No.: 20062235

"characterizing flavors," demonstrating its haphazard, arbitrary, and capricious administration of Ordinance 180457.  *See* Ex. A, at ¶¶ 66-78.

110.    Ordinance 180457 effectively vests unfettered discretion in the hands of officials from DPH (or potentially any other agency) to determine what conduct is prohibited and what conduct is permitted by the Ordinance.

### B.    Plaintiffs Will Suffer Immediate Irreparable Harm Without Injunctive Relief.

111.    The Ordinance irreparably harms Plaintiffs and the public for multiple reasons.

112.    *First*, Plaintiffs and the public are *per se* irreparably harmed because Ordinance 180457 is preempted by state law.  For purposes of injunctive relief, statutory violations constitute irreparable harm *per se*.

113.    Because Ordinance 180457 is expressly preempted by multiple state laws, it violated those preemption statutes and worked irreparable injury *per se*.

114.    *Second,* Ordinance 180457's prohibitions will reduce the Commonwealth's tax revenues because of the lost sales of tobacco products.

115.    Those lost sales amount to millions of dollars the Commonwealth would have otherwise collected in sales tax revenues from the sales of potentially restricted products encompassed by the Ordinance, which revenues the Commonwealth clearly intended to preserve by its enactment of Act 42 and amendments to Section 232-A.

116.    The Commonwealth earned an estimated $4.2 million in annual tax revenues from sales of the potentially restricted products in Philadelphia.  *See* Ex. B, ESI Report, at ¶¶ 23-32.

Case ID: 200600904
Control No.: 20062235

117.     *Third,* Plaintiffs are *per se* irreparably harmed because Ordinance 180457 unlawfully interferes with their constitutional rights to practice their chosen, lawful professions, resulting in the impending loss of business opportunities and jeopardizing entire revenue streams for Plaintiffs.

118.     Indeed, of the approximately 2,490 establishments which sold tobacco products in Philadelphia in 2019, it appears that no more than 10 of the 2,490 establishments (or about .03%) will be permitted to sell the products encompassed by Ordinance 180457 because the approximately 2,480 other establishments do not meet the stringent requirements to be a "Tobacco Products Distribution Business."

119.     The ESI Report concludes that over 99% of such establishments do not meet such criteria.  *See* Ex. B, ESI Report, at ¶¶ 12-22.  Thus, Ordinance 180457 effectively precludes all but about 0.3% of those businesses from selling the products encompassed by the Ordinance.  *See id.*

120.     *Fourth,* Ordinance 180457 will irreparably harm Plaintiffs' employees and those of other sellers of cigars and tobacco products prohibited by the Ordinance.

121.     *Fifth,* Ordinance 180457 will irreparably harm the general public by restricting their access to cigars and other tobacco products.

**C.     The Equities Favor The Entry Of A Preliminary Injunction.**

122.     Because irreparable harm exists *per se* as a result of the City's ongoing violation of multiple state statutes, the Court need not consider the balance of harms.

123.     Even so, the balance of harms weighs heavily in favor of entering a preliminary injunction.

124.     If the Court does not enjoin the City from enforcing the Ordinance, Plaintiffs will be irreparably injured.

Case ID: 200600904
Control No.: 20062235

125.     Conversely, the City will suffer no harm from the issuance of a preliminary injunction.

**D.     The Injunction Is Reasonably Suited To Abate The Offending Activity.**

126.     The issuance of a preliminary injunction prohibiting the City from enforcing the preempted and unconstitutional Ordinance pending the entry of a judgment in this matter is a remedy reasonably tailored to abate the City's offending activity.

127.     Absent such an injunction, the rights of Plaintiffs and the public will continue to be infringed.

**E.     The Entry Of An Injunction Is Not Contrary To The Public's Interest, And, In Fact, Will Serve The Public's Interest.**

128.     Entering an injunction prohibiting enforcement of Ordinance 180457 is not contrary to the public's interest because the City had no authority to enact it in the first place.

129.     Moreover, Ordinance 180457 harms the public's interest in avoiding City laws that conflict with Commonwealth laws, and the public's unquestionable interest in being subject to laws that do not violate constitutional rights.

130.     Ordinance 180457's encroachment on the public's rights that are guaranteed under the Commonwealth and United States Constitutions only further ensures that enjoining its enforcement will benefit the public as a whole.

**F.     An Injunction Will Restore The *Status Quo Ante*.**

131.     There are no impediments to restoring the *status quo*.

Case ID: 200600904
Control No.: 20062235

132.     Preliminary injunctive relief is designed to place the parties in the position they were in prior to the commencement of the unlawful conduct – that is, the enactment of Ordinance 180457 on December 18, 2019.

133.     Entering a preliminary injunction would do just that, by allowing the sale of flavored tobacco products in the manner authorized by law prior to the unconstitutional Ordinance's enactment.

WHEREFORE, for the foregoing reasons, and those set forth in the accompanying Memorandum of Law, Plaintiffs respectfully request that this Court enter an Order, to remain in place pending further order of the Court, preliminarily enjoining Defendants and their directors, officers, agents, affiliates, subsidiaries, servants, employees, and all other persons or entities in active concert or privity or participation with them, from enforcing Ordinance 180457.  Plaintiffs further respectfully request that this Court retain jurisdiction to enforce the preliminary injunction.

<div style="margin-left: 40%;">

HANGLEY ARONCHICK SEGAL PUDLIN
& SCHILLER

By:  */s/ Mark A. Aronchick*
    Mark A. Aronchick (Atty. I.D. No. 20261)
    maronchick@hangley.com
    John S. Summers (Atty. I.D. No. 41854)
    jsummers@hangley.com
    Andrew M. Erdlen (Atty. I.D. No. 320260)
    aerdlen@hangley.com
One Logan Square, 27th Floor
Philadelphia, PA 19103-6933
(215) 568-6200
(215) 568-0300 (facsimile)

*Attorneys for Plaintiffs*

</div>

Dated:  June 30, 2020

Case ID: 200600904
Control No.: 20062235

## **<u>CERTIFICATE OF SERVICE</u>**

I, Andrew M. Erdlen, hereby certify that on this 30th day of June 2020, I caused to be served a copy of the foregoing Plaintiffs' Motion for a Preliminary Injunction and supporting memorandum of law on Defendants via the Court's Electronic Filing System. Pursuant to the City Law Department's Notice dated April 9, 2020, a copy of the foregoing papers were also served on Defendants by email at City_Closure_Complaints@phila.gov.

<div align="right">

*/s/ Andrew M. Erdlen*
Andrew M. Erdlen

</div>